1

2

3

4

5

6

7

8 IN THE UNITED STATES DISTRICT COURT FOR THE

9 EASTERN DISTRICT OF CALIFORNIA

10

11 RICHARD WILLIAM FOWLER,                     2:06-cv-02230-RCT

12             Petitioner,

13       v.

14 D. ADAMS, et al.,

15             Respondents.

16 _____/          MEMORANDUM DECISION
                                            AND ORDER

17

18       This matter comes before the Court on Richard William Fowler's petition for a writ of

19 habeas corpus pursuant to 28 U.S.C. § 2254.

20                                  INTRODUCTION

21       Petitioner Fowler is a state prisoner currently incarcerated at California State Prison,

22 Corcoran in Corcoran, California.  He filed this petition for a writ of habeas corpus to challenge

23 a judgment of conviction entered against him in the Sacramento County Superior Court in 2004

24 on charges of assault, criminal threat, and witness intimidation.  A review of the record shows

25 that the California Court of Appeal, Third Appellate District, correctly applied United States

26 Supreme Court law in rejecting Fowler's claims presented in the petition.  *Id.* § 2254(d).

27 Accordingly, the petition is denied and the case is dismissed with prejudice.

28

1

## PROCEDURAL AND FACTUAL HISTORY

2      The Sacramento County Superior Court convictions resulted in a sentence of twelve

3  years in prison.

4      The California Court of Appeal summarized the facts of this case as follows:

5          On the evening of April 27, 2003, defendant stopped by Louie's
           Cocktail Lounge for a beer.  When he arrived, two people were present --
6      bartender William Cox and patron Daniel Brown.
           Cox told defendant he could not serve him because defendant had
7      recently thrown a beer bottle through the bar's big screen television.  Defendant
       became "verbally combative" and demanded Cox serve him.  When Brown
8      looked in defendant's direction, defendant asked Brown "if [he] wanted some"
       and called him a "fat ass" and a "fat cow."  Brown told defendant that he did not
9      want any trouble.  Defendant then walked up to Brown and hit him in the head.
       Brown placed defendant in a choke hold and brought him to the ground.  After
10     awhile, defendant apologized and Brown released him.  When Brown refused to
       shake defendant's hand, defendant said "F-you guys" and walked toward the
11     exit.  Brown returned to his seat.
           Moments later, defendant approached Brown from behind and struck him
12     on the back of the head with the barrel end of a pool cue.  Brown fell to the
       floor, lying on his back in a fetal like position.  Defendant struck Brown in the
13     head with the pool cue four more times as Brown laid on the floor.
           Brown was taken to the hospital, where he spent three nights.  He
14     suffered a front sinus fracture, a left superior orbital rim fracture and a three inch
       laceration on his forehead.  The sinus fracture required surgery and the laceration
15     required approximately 60 stitches.
           Defendant was arrested on May 19, 2003, and released on bail
16     approximately one week later.
           On August 22, 2003, while out on bail, defendant saw Brown outside the
17     Tumbleweed Bar.  Defendant approached Brown and apologized for the incident
       at Louie's Cocktail Lounge.  When Brown refused to shake defendant's hand
18     and walked inside the bar, defendant followed and told Brown that Brown, Cox
       and another individual weren't "going to be able to make it to the trial.  I have
19     people that will take care of that.  I know where you live.  I know where you
       work.  There's no way I'm going to jail for you."
20         Defendant testified at trial and admitted striking Brown in the forehead
       with a pool cue one time.  He said he did so only after Brown "grabbed" him by
21     the throat, punched him and threw him around the bar.  He denied striking
       Brown more than once and denied striking him in the back of the head.  He also
22     denied threatening Brown at the Tumbleweed Bar.

23  (Lodged Doc. 4 at 2–3 (alteration in original).)

24      Based on the incident at Louie's Cocktail Lounge on April 27, 2003, the Sacramento

25  County jury convicted Fowler of assault with a deadly weapon or by means likely to produce

26  great bodily injury in violation of California Penal Code section 245(a)(1) (count I) and found

27  that Fowler personally inflicted great bodily harm upon Brown in violation of section

28  12022.7(a).  Based on the incident at the Tumbleweed Bar on August 22, 2003, the jury found

1   Fowler not guilty of making a criminal threat in violation of section 422 (count II) and of

2   witness intimidation by force in violation of section 136.1(c)(1) (count III).  However, as to

3   count II, the jury did find Fowler guilty of the lesser included offense of attempting to make a

4   criminal threat in violation of sections 664 and 422.  As to count III, the jury found Fowler

5   guilty of the lesser included offense of witness intimidation in violation of section 136.1(a)(1),

6   (a)(2), (b)(2).  Finally, as to both counts II and III, the jury found that Fowler committed the

7   offenses while out on bail for assault, in violation of section 12022.1.  (Lodged Doc. 8 at

8   186–90.)

9        The trial court sentenced Fowler to the upper term of four years for the assault, plus an

10  additional three year term, to be served consecutively, for the infliction of great bodily injury

11  (count I).  (Lodged Doc. 7 at 341–42.)  The upper term was imposed because of several

12  aggravating factors, including the fact that Fowler was on probation when the crime was

13  committed, he engaged in violent conduct that indicates a serious danger to society, his prior

14  convictions are numerous and of increasing seriousness, he has served a prior prison term, and

15  his prior performance on probation and parole was unsatisfactory.  (*Id.* at 340–41.)  It sentenced

16  Fowler to one year of imprisonment on count II, plus an additional two years for committing the

17  crime while out on bail, but stayed the term pursuant to section 654.  (*Id.* at 342.)  The trial

18  court imposed the middle term, two-year sentence as to count III, plus an additional two years

19  for committing the crime while out on bail, to be served consecutively to the sentence on count

20  I.  (*Id.*)  Finally, having found Fowler's prior felony conviction true beyond a reasonable doubt,

21  the trial court sentenced him to an additional consecutive term of one year.  (*Id.*)  Thus, in the

22  aggregate, the trial court sentenced Fowler to twelve years in state prison.

23       In an unpublished decision, the California Court of Appeal affirmed the superior court's

24  judgment on September 13, 2005.  (Lodged Doc. 4 at 1, 12.)  Fowler thereafter filed a petition

25  for review in the California Supreme Court, which was denied on November 16, 2005, without

26  comment or citation to authority.  (Lodged Doc. 6.)

27       On October 10, 2006, Fowler filed this federal petition for a writ of habeas corpus.

28  Respondents concede that Fowler's claims have been fully exhausted and are properly before

1  this court.

2                                CLAIMS

3        Fowler raises the following claims in his petition:

4        1.  Violation of his right to due process based on the use of California Jury

5  Instruction–Criminal 2.03, allowing the jury to infer Fowler's consciousness of guilt if they

6  found he made false pretrial statements.

7        2.  Violation of his right to due process based on the use of California Jury

8  Instruction–Criminal 2.21.2 without defining the term "material part."

9        3.  Violation of his right to trial by jury due to the imposition of upper term and

10  consecutive sentences based on facts that were not found by the jury beyond a reasonable doubt.

11                             LEGAL STANDARD

12      In 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act

13  ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which established that a

14  federal habeas corpus petition shall not be granted with respect to any claim adjudicated on the

15  merits in the state courts unless the adjudication either: (1) resulted in a decision that was

16  contrary to, or involved an unreasonable application of, clearly established federal law, as

17  determined by the United States Supreme Court; or (2) resulted in a decision that was based on

18  an unreasonable determination of the facts in light of the evidence presented to the state courts.

19  28 U.S.C. § 2254(d).

20          Under the "contrary to" clause, a federal habeas court may grant the writ if the
            state court arrives at a conclusion opposite to that reached by [the Supreme Court]
21          on a question of law or if the state court decides a case differently than [the
            Supreme Court] has on a set of materially indistinguishable facts.
22
23  *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000).  "Under the 'unreasonable application' clause,

24  a federal habeas court may grant the writ if the state court identifies the correct governing legal

    principle from [the Supreme Court]'s decisions but unreasonably applies that principle to the
25
    facts of the prisoner's case."  *Id.* at 413.
26
27       Under AEDPA, the federal courts review the "last reasoned decision" of the state courts.

28  *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991).  Because the California Supreme Court denied

                                   -4-

1   Fowler's petition for review without comment or citation to authority, the Court will here

2   review the decision of the California Court of Appeal.

3                                    DISCUSSION

4   I.      *California Jury Instruction–Criminal 2.03*

5          Fowler claims that his right to due process was violated by the use of California Jury

6   Instruction–Criminal ("Instruction") 2.03.  Instruction 2.03 states,

7          If you find that before this trial the defendant made a willfully false or
           deliberately misleading statement concerning the crimes for which he is now
8          being tried, you may consider that statement as a circumstance tending to prove a
           consciousness of guilt.  However, that conduct is not sufficient by itself to prove
9          guilt, and its weight and significance, if any, are for you to decide.

10  (Lodged Doc. 8 at 123.)  Fowler argues that this instruction was improper because his pretrial

11  statement and trial testimony were internally consistent and consistent with all the evidence

12  other than the testimony of his accusers, and therefore do not demonstrate consciousness of

13  guilt.  He further contends that the instruction was highly prejudicial because the case hinged on

14  witness credibility and the instruction inappropriately focused the jury's scrutiny on Fowler's

15  credibility, and did not apply to that of the other witnesses.  The trial court, in evaluating

16  Fowler's objection to the instruction, found no merit to these arguments.  (*See* Lodged Doc. 7 at

17  252–53.)  The California Court of Appeal also rejected Fowler's challenge to the instruction.

18  (Lodged Doc. 4 at 5–6.)

19         A.      *Legal Standard*

20         The only question for a federal habeas court when a petitioner challenges a state jury

21  instruction is "whether the ailing instruction by itself so infected the entire trial that the resulting

22  conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quoting *Cupp v.

23  Naughten*, 414 U.S. 141, 147 (1973)).  Thus, it is insufficient to demonstrate that the instruction

24  was improper under state law, or even that the state evidentiary rule allowing the instruction was

25  unwise.  *Id.* at 71–72.  Instead, the petitioner must show that the instruction, taken in the context

26  of the trial record as a whole, violated some due process right protected by the Fourteenth

27  Amendment.  *Id.* at 72.  In other words, a potentially erroneous instruction is reviewed to

28  determine "'whether there is a reasonable likelihood that the jury has applied the challenged

                                           -5-

1    instruction in a way' that violates the Constitution." *Id.* (quoting *Boyde v. California*, 494 U.S.

2    370, 380 (1990)).   Jury instructions that relieve the State of its burden to prove every element of

3    a charged offense beyond a reasonable doubt violate a defendant's due process rights.  *Carella*

4    *v. California*, 491 U.S. 263, 265 (1989) (citations omitted).

5       *B.*   *Instruction 2.03*

6      Fowler contends that Instruction 2.03 should not have been given because it lacks

7    evidentiary support: "Where appellant's pretrial statement is internally consistent and consistent

8    with all evidence except his accuser's biased testimony, an instruction focusing on appellant's

9    consciousness of guilt, where no facts support such consciousness, is unwarranted and highly

10   prejudicial." (Lodged Doc. 1 at 11.)  He further argues that the instruction creates an unproven

11   inference that Fowler made a misleading statement, which violates due process by removing an

12   element of the crime from the jury's consideration.  (Lodged Doc. 3 at 4.)

13      On direct review, the California Court of Appeal rejected Fowler's argument.  It first

14   accurately described the background to this claim, as described above.  (Lodged Doc. 4 at 5.)

15   Proceeding to the merits, the court found that the instruction was proper under California law

16   even if Fowler's pretrial statement was consistent with his trial testimony.  (*Id.*)  The court

17   concluded that "[i]f the jury believed the testimony of other witnesses, it could reasonably have

18   found that [Fowler]'s pretrial statements were willfully false and deliberately misleading."

19   (*Id.* at 6.)

20     To the extent that Fowler contends that the trial court's use of Instruction 2.03 violated

21   state law because it lacked evidentiary support, such a claim is not cognizable on federal habeas

22   review.  *See Estelle*, 502 U.S. at 67–68.  This Court will determine only if the use of the

23   instruction violated Fowler's due process rights.  The Ninth Circuit has previously held that

24   Instruction 2.03 is constitutional.  *Turner v. Marshall*, 63 F.3d 807, 819–20 (9th Cir. 1995),

25   *overruled on other grounds by Tolbert v. Page*, 182 F.3d 677 (9th Cir. 1999).  In *Turner*, the

26   court held that "[s]o long as the instruction does not state that inconsistent statements constitute

27   evidence of guilt, but merely states that the jury may consider them as indicating a

28   consciousness of guilt, the instruction would not violate constitutional rights."  *Id.* at 820.  In

this case, the jury was instructed that *if* they found that Fowler had made willfully false or deliberately misleading statements before trial they *could*, but were not required to, consider that as evidence tending to show a consciousness of guilt.  This does not improperly relieve the State of its burden of proof or require the jury to infer guilt or even a consciousness of guilt.  *See Francis v. Franklin*, 471 U.S. 307, 314–15 (1985) (holding that a permissive inference in a jury instruction is not a violation of due process).

Based on the foregoing, this Court finds that the California Court of Appeal's rejection of Fowler's instructional error claim as to Instruction 2.03 was neither contrary to, nor an unreasonable application of, clearly established federal law as determined by the United States Supreme Court.  *See* 28 U.S.C. § 2254(d).  Thus, habeas relief is not warranted on this claim.

II.    *California Jury Instruction–Criminal 2.21.2*

Fowler claims that his right to due process was violated by the use of Instruction 2.21.2. Instruction 2.21.2 states,

> A witness, who is willfully false in one material part of his testimony, is to be distrusted in others.  You may reject the whole testimony of a witness who willfully has testified falsely as to a material point, unless, from all the evidence, you believe the probability of truth favors his testimony in other particulars.

(Lodged Doc. 8 at 131.)  Fowler argues that this instruction was improper because the trial court failed to sua sponte instruct the jury on the meaning of the phrase "material part."  Because Fowler argues that this phrase has a "technical meaning peculiar to the law," the court had a duty to define it for the jury.  The trial court's failure in this regard impeded the jury's ability to properly weigh the conflicting statements of the various witnesses and the impact of any lying about "material" matters.

Fowler did not object to this instruction at trial.  In fact, in his argument against Instruction 2.03, Fowler's counsel suggested that Instruction 2.21.2 negated the need for Instruction 2.03, stating "It certainly could be argued that [Fowler], if [the district attorney] believes he was false, was false under 2.21.2 just like every other witness."  (Lodged Doc. 7 at 252.)  The California Court of Appeal rejected Fowler's argument on the basis that this argument had been previously rejected in *People v. Wade*, 46 Cal. Rptr. 2d 645 (Cal. Ct. App.

1    1995).  (Lodged Doc. 4 at 7.)

2         In *Wade*, the California Court of Appeal held that, "as used in the instruction, 'material'

3    carries its ordinary meaning of 'substantial, essential, relevant or pertinent.'"  46 Cal. Rptr. 2d at

4    650.  Fowler spends quite a bit of time arguing that the California courts should reconsider this

5    decision.  The Court of Appeal, after several pages of analysis, declined this invitation and the

6    California Supreme Court denied review.

7         *Wade*'s interpretation of the meaning of "material part" is binding on this court.  *See*

8    *Mendez v. Small*, 298 F.3d 1154, 1158 (9th Cir. 2002) (stating the long understood rule that "[a]

9    state court has the last word on the interpretation of state law" (citation omitted)).  Because

10   "material part" carries its ordinary meaning Fowler's argument, based entirely on the premise

11   that "material" is used as a technical legal term, must fail.  Certainly any error, although this

12   court sees none, would not rise to the level of a constitutional violation as required by *Estelle*.

13   *See supra* Part I.A.  Therefore, this Court finds that the California Court of Appeal's rejection of

14   Fowler's instructional error claim as to Instruction 2.21.2 was neither contrary to, nor an

15   unreasonable application of, clearly established federal law as determined by the United States

16   Supreme Court.  *See* 28 U.S.C. § 2254(d).  Habeas relief is not warranted on this claim.

17   *III.    Imposition of Upper Term & Consecutive Sentences*

18        Fowler claims that he was denied his federal constitutional right to a jury trial when he

19   was sentenced, based on facts not found to be true beyond a reasonable doubt by the jury, to an

20   upper term sentence for the assault conviction and his sentences were imposed consecutively,

21   rather than concurrently.  The superior court indicated that it was sentencing Fowler to the upper

22   term for the assault conviction because of the following aggravating factors: (1) Fowler engaged

23   in violent conduct indicating he is a serious danger to society; (2) his prior convictions as an

24   adult and sustained petitions in juvenile delinquency proceedings were numerous and of

25   increasing seriousness; (3) he has served a prior prison term; (4) he was on probation when the

26   crimes were committed; and (5) his prior performance on probation and parole was

27   unsatisfactory.  (Lodged Doc. 7 at 340–41.)  It listed no factors leading to the imposition of

28   consecutive sentences.

-8-

1          *A.       Legal Standard*

2          Fowler's argument before the California Court of Appeal and the California Supreme

3   Court was based on *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Blakely v. Washington*,

4   542 U.S. 296 (2004).   After Fowler's conviction became final, the Supreme Court struck down

5   California's system of determinate sentencing in *Cunningham v. California*, 549 U.S. 270

6   (2007).   In *Cunningham*, the Court held that California's determinate sentencing scheme

7   violated the Sixth Amendment and the *Apprendi* line of cases because it allowed judges to find

8   facts that "increase[] the penalty for a crime beyond the prescribed statutory maximum."   549

9   U.S. at 288 (quoting *Apprendi*, 530 U.S. at 490).   Under *Apprendi*, any such fact, other than a

10  prior conviction, "must be submitted to a jury, and proved beyond a reasonable doubt."  *Id.* at

11  288–89 (quoting *Apprendi*, 530 U.S. at 490).

12         Under the California system, the statute defining most offenses describes three terms of

13  imprisonment, a lower, middle, and upper term sentence.  *Id.* at 277.   In its discussion of the

14  California sentencing scheme, the *Cunningham* court noted that if California judges were "free

15  to exercise their 'discretion to select a specific sentence within a defined range,'" the sentencing

16  scheme would be constitutional under *United States v. Booker*, 543 U.S. 220 (2005).  549 U.S.

17  at 292 (quoting *Booker*, 543 U.S. at 233 (stating that the court has "never doubted the authority

18  of a judge to exercise broad discretion in imposing a sentence within a statutory range")).

19  However, the California system allowed trial judges to impose an upper term sentence *only*

20  when the judge had found an aggravating circumstance.  *Id.* at 288 (citation omitted).

21  Therefore, the relevant statutory maximum for *Apprendi* is the middle term, *id.* (citing *Blakely*,

22  542 U.S. at 303), and other than the fact of a prior conviction, a defendant may be sentenced to

23  the upper term only based on facts submitted to a jury and proved beyond a reasonable doubt.

24         The Ninth Circuit has held that the result in *Cunningham* was clearly dictated by the

25  *Apprendi* line of cases, particularly *Blakely*, which struck down a similar sentencing scheme in

26  Washington.  *Butler v. Curry*, 528 F.3d 624, 628 (9th Cir. 2008).   Therefore, *Cunningham*

27  applies retroactively on collateral review.   *Id.* at 639.   Thus, this Court must determine if the

28  California Court of Appeal's opinion upholding Fowler's sentence is contrary to or involves an

1   unreasonable application of *Blakely* and *Cunningham*.

2       *B.    Consecutive Sentences*

3       The California Court of Appeal summarized Fowler's argument regarding his

4   consecutive sentences as follows: "[Fowler] contends his . . . consecutive sentence for count

5   [III] must be reversed because the trial court relied on facts not submitted to the jury and proved

6   beyond a reasonable doubt, thus depriving defendant of the constitutional right to a jury trial on

7   facts legally essential to the sentence." (Lodged Doc. 4 at 10.)  The court ruled that the

8   application of consecutive sentences did not violate the Sixth Amendment because California

9   Penal Code section 669 leaves the decision of whether terms should run consecutively or

10  concurrently to the discretion of the trial court.  (*Id.* at 11 (citing *People v. Reeder*, 200 Cal.

11  Rptr. 479, 495 (Cal. Ct. App. 1984)).)  The *Reeder* court held that "there is no . . . statutory

12  presumption in favor of concurrent rather than consecutive sentences for multiple offenses

13  except where consecutive sentencing is statutorily required."  200 Cal. Rptr. at 495.

14      Fowler tries to avoid this conclusion by arguing that section 669 creates a presumption

15  in favor of concurrent sentencing when it states: "Upon failure of the court to determine how the

16  terms of imprisonment on the second or subsequent judgment shall run, the term of

17  imprisonment on the second or subsequent judgment shall run concurrently."  Cal. Penal Code

18  § 669.  However, by its very terms, this presumption comes into play only if the trial court has

19  failed to decide whether the terms should run consecutively or concurrently.  That is not the case

20  here, where the court clearly determined that Fowler's sentences should run consecutively.  (*See*

21  Lodged Doc. 8 at 342.)

22      Fowler next argues that California Rule of Court 4.425 requires that a judge make

23  findings of fact before imposing consecutive sentences.  Rule 4.425 contains "[c]riteria affecting

24  the decision to impose consecutive rather than concurrent sentences."  However, neither section

25  669 nor Rule 4.425 mandates that a trial judge find one or more factors before imposing

26  consecutive sentences.  Furthermore, any requirement in Rule 4.425 that a judge make particular

27  factual findings would be impermissibly inconsistent with section 669, which leaves the

28  imposition of consecutive sentences to the discretion of trial judges.  Cal. Const. art. VI, § 6(d)

-10-

1    ("rules adopted [by the Judicial Council] shall not be inconsistent with statute").

2         When a sentencing decision is based on a judge's exercise of discretion rather than fact

3    finding, it does not violate the Sixth Amendment.  *See Booker*, 543 U.S. at 233 (stating that the

4    court has "never doubted the authority of a judge to exercise broad discretion in imposing a

5    sentence within a statutory range").  The trial judge in this case was free to exercise her

6    discretion under section 669 to sentence Fowler to consecutive or concurrent terms.  Therefore,

7    this Court finds that the California Court of Appeal's rejection of Fowler's consecutive sentence

8    Sixth Amendment claim was neither contrary to, nor an unreasonable application of, clearly

9    established federal law as determined by the United States Supreme Court.  *See* 28 U.S.C. §

10   2254(d).  Habeas relief is not warranted on this claim.

11        *C.     Upper Term Sentence*

12        Fowler makes an identical argument regarding the imposition of an upper term sentence

13   for his assault conviction as he does regarding his consecutive sentences.  The California Court

14   of Appeal rejected this argument on two grounds: (1) the California Supreme Court's holding in

15   *People v. Black (Black I)*, 113 P.3d 534 (Cal. 2005), that the California sentencing scheme did

16   not violate the Sixth Amendment principles set forth in the *Apprendi* line of cases; and (2) that

17   because the trial court properly found that Fowler had numerous prior convictions, the rule from

18   *Apprendi* and *Blakely* does not apply to prior convictions, and this factor alone was sufficient to

19   expose Fowler to the upper term, the trial court's discussion of other aggravating factors did not

20   violate *Apprendi* or *Blakely*.  (Lodged Doc. 4 at 11.)

21        The Ninth Circuit has held that *Black I* applied "a rule of decision contrary to clearly

22   established Supreme Court precedent," meeting the requirements of AEDPA.  *Butler*, 528 F.3d

23   at 640–41.  Thus, the Court of Appeal's reliance on *Black I* is contrary to "clearly established

24   Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d).

25        However, our inquiry must continue to the second basis for the Court of Appeal's

26   decision.  The trial court found several aggravating factors justified sentencing Fowler to the

27   upper term, including California Rule of Court 4.421(b)(2), "defendant's prior convictions as an

28   adult or sustained petitions in juvenile delinquency proceedings are numerous or of increasing

-11-

seriousness." Specifically, the court found that his convictions were both numerous and of increasing seriousness. (Lodged Doc. 7 at 341.) Because the rule is stated in the disjunctive, requiring either that the convictions be numerous, or that they be of increasing seriousness, this Court will look only at whether the convictions are numerous. Under California law, only one aggravating factor is necessary to authorize an upper term sentence, shifting the relevant maximum sentence for purposes of *Apprendi* from the middle to the upper term. *Butler*, 528 F.3d at 642–43 (relying on interpretation of California law in *People v. Black (Black II)*, 161 P.3d 1130 (Cal. 2007)).

Fowler has several prior convictions, including juvenile convictions for felony grand theft and misdemeanor vehicle theft, and adult convictions for felony assault with a deadly weapon, misdemeanor criminal threat, and two driving under the influence convictions.[1]  The Ninth Circuit has held that the prior conviction exception does not extend to nonjury juvenile adjudications. *United States v. Tighe*, 266 F.3d 1187, 1194–95 (9th Cir. 2001).  However, several years later, in *Boyd v. Newland*, 467 F.3d 1139 (9th Cir. 2006), the court held that because several circuits disagreed with *Tighe* and the Supreme Court had not spoken on the issue, a state court's use of a "juvenile adjudication as a sentencing enhancement was not contrary to, [and did not] involve[] an unreasonable application of, Supreme Court precedent." 467 F.3d at 1152.  The Supreme Court still has not spoken on the issue; therefore, the trial court's consideration of Fowler's juvenile convictions was neither contrary to, nor an unreasonable application of, clearly established federal law as determined by the United States Supreme Court.  *See* 28 U.S.C. § 2254(d); *see also Kessee v. Mendoza-Powers*, 574 F.3d 675, 679 (9th Cir. 2009) (according similar AEDPA deference to California courts' finding that petitioner committed crimes while on probation despite Ninth Circuit's determination that such a finding did not fall within the prior conviction exception).

Nor has the United States Supreme Court spoken to the issue of whether a trial court's

---

[1] The first driving under the influence conviction occurred in 2002. (Lodged Doc. 8 at 206.)  The second occurred in 2003 and Fowler pled guilty and was sentenced during his sentencing for the convictions at issue in this case. (Lodged Doc. 7 at 335–36.)

determination that convictions are sufficiently numerous under Rule 4.421(b)(2) fits within the "prior conviction" exception.  The California Supreme Court has held that this question does fit within the exception because "[t]he determinations whether a defendant has suffered prior convictions, and whether those convictions are numerous or of increasing seriousness require consideration of only the number, dates, and offenses of the prior convictions alleged." *Black II*, 161 P.3d at 1143 (internal quotation and citation omitted).  In *Black II*, the Court held that three misdemeanor and two felony convictions were numerous for the purposes of the rule.  *Id.* at 1142.  Fowler has two felony and four misdemeanor convictions, thus, his prior convictions are numerous and he is eligible for the upper term sentence.  Any further fact finding was thus irrelevant for the purposes of *Apprendi*.  *Butler*, 528 F.3d at 643.

The California Court of Appeal's decision upholding Fowler's upper term sentence was neither contrary to, nor an unreasonable application of, clearly established federal law as determined by the United States Supreme Court.  *See* 28 U.S.C. § 2254(d).  The trial court found that Fowler's numerous prior juvenile and adult convictions were an aggravating factor supporting the imposition of an upper term sentence.  Only one aggravating factor needs to be established to raise the maximum statutory sentence to the upper term for the purposes of *Apprendi*.  *Butler*, 528 F.3d at 642–43.  Established Supreme Court precedent states that a trial court may consider prior convictions in sentencing, even if the existence of those convictions has not been determined by a jury beyond a reasonable doubt.  *Cunningham*, 549 U.S. at 288–89 (quoting *Apprendi*, 530 U.S. at 490).  Consideration of the juvenile convictions, although improper under Ninth Circuit precedent, is not an unreasonable application of clearly established Supreme Court precedent.  *Boyd*, 467 F.3d at 1152.  In sum, the trial court's determination that Fowler had numerous convictions was proper and sufficient to make the upper term the maximum statutory sentence under *Apprendi* and *Blakely*.  Thus, the California Court of Appeal did not err in upholding Fowler's upper term sentence and federal habeas relief is not warranted under AEDPA on this claim.

1       Therefore, it is hereby

2       **ORDERED** that Fowler's petition for a writ of habeas corpus pursuant to 28 U.S.C.

3  § 2254 is **DENIED** and the case is **DISMISSED** with prejudice.

4       The Clerk is directed to enter the accompanying Judgment and to send uncertified copies

5  of this Order and the Judgment to all counsel of record and to any party appearing *pro se* at said

6  party's last known address.

7       DATED this 3rd day of November, 2009.

8

9                       /s/ Richard C. Tallman
                          UNITED STATES CIRCUIT JUDGE

10                     Sitting by designation

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28